## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL MYERS,                          :
   Petitioner,                        :
                                 :
   v.                                  :          Case No. 3:23-cv-753 (MPS)
                                   :
CONNECTICUT COMMISSION OF                :
CORRECTION,                              :
   Respondent.                        :

## MEMORANDUM OF DECISION

Petitioner, Michael Myers, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court conviction. The respondent contends that the petition should be denied because two of the petitioner's grounds for relief are not cognizable in a federal habeas petition and the state court decisions on the remaining two claims were in accordance with federal law. For the following reasons, the petition for writ of habeas corpus is denied.

### I.    Procedural Background

On June 20, 2008, the petitioner was convicted, after a jury trial, of intentional manslaughter in the first degree, carrying a pistol without a permit, tampering with physical evidence, and criminal possession of a firearm. ECF No. 1, ¶¶ 2(b), 3, 5. He was sentenced to a term of imprisonment of fifty years. *Id.*

On direct appeal, the petitioner challenged his conviction on five grounds, that the trial court improperly (1) failed to admit a defense witness's statement into evidence under the spontaneous utterance exception to the hearsay rule, (2) denied defendant access to the mental

health records of a prosecution witness, (3) admitted a photograph of the victim into evidence, (4) instructed the jury that evidence of motive was important, and (5) denied his *Batson* challenge during jury selection. *State v. Myers*, 126 Conn. App. 239, 242, 11 A.3d 1100, 1104, *cert. denied*, 300 Conn. 923, 14 A.3d 1006 (2011). The Connecticut Appellate Court affirmed the conviction, and the Connecticut Supreme Court denied certification.

On December 19, 2011, the petitioner filed a petition for writ of habeas corpus in state court on the ground that his counsel in the trial court was ineffective by failing to preserve a claim of racial discrimination in the prosecutor's use of peremptory challenges. On September 16, 2014, the court denied relief. *Myers v. Commissioner of Corr.*, No. CV-12-4004541, 2014 WL 5356142 (Conn. Super. Ct. Sept. 16, 2014). The Connecticut Appellate Court denied the petitioner's appeal of the denial of his state habeas petition. *Myers v. Commissioner of Corr.*, 164 Conn. App. 1, 134 A.3d 237 (2016).[1]

The petitioner commenced this action by petition filed on June 9, 2023. He challenges his conviction on four grounds: (1) the Connecticut Appellate Court erred in determining that the petitioner's statement made immediately after the shooting was not admissible as a spontaneous utterance; (2) the Connecticut Appellate Court erred in upholding the trial court's admission of a photograph of the victim; (3) the trial court erred in denying the petitioner's *Batson* challenge; and (4) trial counsel was ineffective by failing to preserve part of the *Batson* claim for appellate review.

## II.   <u>Factual Background</u>

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts.

---

[1] While the appeal of his first state habeas petition was pending, the petitioner filed a second state habeas petition but later withdrew it. ECF No. 1 at 4-5.

The [petitioner] had a tempestuous relationship with Sahquita Alston, the mother of his child. On the night of June 2 and the early morning of June 3, 2005, Alston met the victim, William Corey, at a nightclub in New Haven, after which they had sexual relations at his apartment. Corey then drove her back to her residence, where they found the [petitioner] waiting outside. The [petitioner] advised Corey that he would talk to him later.

Over the next two days, the [petitioner] argued with Alston, accusing her of having sexual relations with Corey, which she denied. Subsequently, in the early morning of June 5, 2005, she physically attacked the [petitioner] when she saw him with another woman at his house. On the night of June 6, 2005, the [petitioner] and Alston spent time together at his house, during which he telephoned Corey and arranged a meeting. He took a handgun with him when he and Alston left the house.

The [petitioner] and Alston walked to meet Corey, who was waiting in his car. Both got into Corey's car, which he then drove around New Haven, at which time the [petitioner] asked questions about what had transpired between Corey and Alston on the morning of June 3. During this time, the [petitioner] also telephoned a friend of Alston who had left the club with her and Corey on June 3. At some point, the [petitioner] directed Corey to stop the car and exited on the passenger side after Alston. Standing outside the car, he fired one gunshot into Corey and ran from the scene. Corey died of internal bleeding caused by the single gunshot wound.

*Myers*, 126 Conn. App. at 242-43, 11 A.3d at 1104.

## III. <u>Standard of Review</u>

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam)) (internal quotation marks omitted).

As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a claim will be considered "adjudicated on the merits" even if

3

the state court fails to mention the federal claim and cites no relevant federal case law. *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001); *accord Harrington v Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *id.* at 98 (section 2254(d) deference applies even "[w]here a state court's decision is unaccompanied by an explanation"). Thus, a court must "extend considerable deference even to deficient reasoning, at least in the absence of an analysis so flawed as to undermine confidence that the constitutional claim has been fairly adjudicated." *McCray v. Capra*, 45 F.4th 634, 640 (2d Cir. 2022) (citation and punctuation omitted).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law "as determined by the Supreme Court" "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *White v. Woodall*, 572 U.S. 415, 419 (2014). Second Circuit law that does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief. *See Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (circuit precedent,

even if "merely reflect[ing]" Supreme Court precedent, does not constitute "clearly established

federal law" for purposes of § 2254(d)(1)); *Renico v. Lett,* 559 U.S. 766, 778 (2010) (holding that

court of appeals erred in relying on its own decision in federal habeas action).

A decision is "contrary to" clearly established federal law where the state court applies a

rule different from that set forth by the Supreme Court or if it decides a case differently than the

Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court

unreasonably applies Supreme Court law when the court has correctly identified the governing

law, but unreasonably applies that law to the facts of the case. The state court decision must be

more than incorrect; it must be "'so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fair-minded disagreement.'" *Virginia*

*v. LeBlanc*, 582 U.S. 91, 94 (2017) (quoting *Harrington*, 562 U.S. at 103); *see also Burt v. Titlow*,

571 U.S. 12, 20 (2013) (federal habeas relief warranted only where the state criminal justice system

has experienced an "extreme malfunction"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)

(objective unreasonableness is "a substantially higher threshold" than incorrectness). Even clear

error will not establish an unreasonable application of Supreme Court law. *LeBlanc,* 582 U.S. at

94 (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam)).

The "determination of whether a court has unreasonably applied a legal standard depends

in large measure on the specificity of the standard in question." *Brisco v. Ercole*, 565 F.3d 80, 89

(2d Cir. 2009). "The more general the rule the more leeway courts have in reaching outcomes in

case-by-case determinations" as the application of a general standard to a specific case "can

demand a substantial element of judgment." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Thus, "where the precise contours of a right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *Woods*, 575 U.S. at 318 (citation, brackets, and internal quotation marks omitted). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Harrington*, 562 U.S. at 101 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). "[I]t is the habeas applicant's burden to show that the state court applied [Federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof.").

When reviewing a habeas petition, the Court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) (standard for evaluating state court rulings where constitutional claims have been considered on the merits and which affords state court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet and was intended to be so).

The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them[,]" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180; *see also Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("Whether a state court's decision was

unreasonable must be assessed in light of the record the court had before it."). Because collateral review of a conviction applies a different standard than direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993).

IV.   **Discussion**

The respondent contends that the petition should be denied because the petitioner's first two grounds for relief, state court evidentiary rulings, are not cognizable in a federal habeas action and the state courts properly applied federal law in deciding the last two claims relating to *Batson* challenges.

**A.  State Evidentiary Rulings**

The petitioner's first two grounds for relief relate to evidentiary issues: the failure to admit the petitioner's statement made after the shooting as a spontaneous utterance and the admission into evidence of a photograph of the victim.

Federal habeas relief cannot be granted for violation of state evidentiary rules. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Griggs v. Lempke*, 797 F. App'x 612, 615 (2d Cir. 2020) ("Merely showing that the state court admitted evidence in violation of state rules of evidence is not enough, for such a state court decision on state law, even if erroneous, is not an independent ground for the writ of habeas corpus to issue under AEDPA."). Such challenges are cognizable on federal review only where the petitioner contends that "the error deprived the petitioner of his due process right to a fundamentally fair trial." *Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) (citation omitted); *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (petitioner must show not only that evidentiary ruling was error under state law, but also that it

denied him his constitutional right to a fair trial).

### 1. Hearsay Exception

In his first claim, the petitioner contends that the trial court failed to admit, as a spontaneous utterance exception to the hearsay rule, a statement he made immediately following the shooting. "[W]hen a trial court's evidentiary exclusions take on constitutional dimensions, ... we must examine the stated reasons for the exclusion and inquire into possible state evidentiary law errors that may have deprived the petitioner of a fair trial." *Scrimo v. Lee*, 935 F.3d 103, 114-15 (2d Cir. 2019) (internal quotation marks and citations omitted). When considering a claim of omitted evidence, fundamental fairness would be violated if "the omitted evidence creates a reasonable doubt that did not otherwise exist." *United States v. Augers*, 427 U.S. 97, 112 (1976).

The Connecticut Appellate Court identified the following additional facts and procedural history relevant to this claim.

> The [petitioner] decided not to testify at his trial, but his recorded statement to the police of June 9, 2005, was in evidence. In that statement, he told the police that, after shooting Corey, he told "some lady outside" to call the police because "somebody been shot." During the trial, the [petitioner] sought to introduce the testimony of Sabrina Brown regarding that statement and the state filed a motion in limine to preclude it. In an offer of proof, Brown testified that she lived close to the crime scene and knew the [petitioner]. She testified that on June 6, 2005, he knocked on her door and stated his name, and, when she opened the door, he asked if she could call 911 because someone was hurt. She described his demeanor at the time as "[l]ike hi[m]self really. Flat.... Soft spoken." She also testified that the police arrived "five to ten minutes" after the [petitioner] left her front door.

*Myers*, 126 Conn. App. at 244, 11 A.3d at 1105.

Under state law, a spontaneous or excited utterance, must be "spontaneous and made under circumstances that would preclude contrivance and misrepresentation." *Id*. at 245, 11 A.3d at 1105. The trial court considered that some time had elapsed between the shooting and the petitioner's

statement and, although the time was short, it was long enough for him to deliberate and fabricate a statement. Also, the witness did not describe the petitioner as appearing to be under the influence of the event. The trial court concluded that the statement was unsolicited and self-serving and nothing in the offer of proof clearly showed the statement to be reliable. Thus, the trial court found the statement inadmissible as a spontaneous utterance and the Connecticut Appellate Court concluded that the trial court did not abuse its discretion in doing so. *Id.* at 246, 11 A.3d at 1106. This Court agrees that the state court decisions correctly applied state law. As the state evidentiary ruling was correct, the petitioner was not denied a fundamentally fair trial by the exclusion of this evidence.

Further, federal law regarding excited utterances mirrors state law. *See Michigan v. Bryant*, 562 U.S. 344, 361-62 (2011) ("Statements relating to a startling event or condition made while the declarant was under the stress of excitement cause by the event or condition ... are considered reliable because the declarant, in the excitement, presumably cannot form a falsehood." (internal quotation marks and citation omitted)). As the standards are the same, the state court decisions also did not unreasonably apply federal law to the facts of the case. The petition for writ of habeas corpus is denied on this ground.

## 2. Photograph of the Victim

In his second claim, the petitioner challenges the admission of a photograph of the victim. Courts considering similar claims have held that this is a state law evidentiary issue that is not cognizable in a federal habeas action. *See, e.g., Serrano v. Royce*, No. 20 Civ. 06660(PMH)(JCM), 2023 WL 9418661, a *8 (S.D.N.Y. Dec. 20, 2023) (photographs of victim's body were necessary to prove elements of the crime and did not deprive defendant of fair trial so claim did not warrant

federal habeas relief); *Lou v. Mantello*, No. 98-CV-5542(JG), 2001 WL 1152817, at *7 (E.D.N.Y. Sept. 25, 2001) (claim that photographs of the murder victim were erroneously admitted into evidence alleged only violation of state law and was not cognizable on federal habeas review). Thus, this claim, which concerns a photograph of the victim while alive, not a photograph of the victim's body, is not cognizable in this action.

Further, even if admission of the photograph were erroneous, when analyzing a claim that allegedly erroneous admission of evidence deprived the petitioner of a fundamentally fair trial, the court must determine whether "the evidence in question was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (internal quotation marks and citations omitted). If not, the allegedly erroneous admission does not violate the petitioner's right to a fair trial. The petitioner presents no argument suggesting that a photograph of the victim while alive provided a basis for his conviction or removed a reasonable doubt of his guilt. The petition for writ of habeas corpus is denied on this ground.

## B.  Batson Challenges

The petitioner's third and fourth grounds for relief relate to jury selection, specifically to the prosecutor's use of a peremptory strike to remove "D," an African-American venireperson. The petitioner claims that the state accepted other venirepersons who were similarly situated to D but of a different race, thereby showing that D's dismissal was based on race and the reasons articulated by the prosecutor for striking D were insufficient and pretextual. *Myers*, 126 Conn. App. at 256, 11 A.3d at 1111. The Connecticut Appellate Court determined that the disparate treatment claim had not been preserved for appellate review and rejected the pretextual reasons

claim on the merits. The petitioner then asserted his disparate treatment claim in his state habeas

case, claiming that trial counsel was ineffective for failing to preserve the claim.

The Connecticut Appellate Court provided the following facts relevant to these claims:

> During voir dire, the prosecutor and defense counsel both questioned D. In response to the prosecutor's questions, D revealed that he had been arrested by the New Haven police nineteen years earlier but believed that he had been treated fairly because he was innocent and the case had been nolled. He indicated that he did not harbor any bias against the criminal justice system or against police officers. In response to defense counsel's questions, D revealed that his son had been prosecuted and convicted in the Milford court for armed robbery and was serving a twenty year sentence. He stated that he writes to his son but that his son does not write back. He also stated that his son's situation would not affect his impartiality because his son was a grown man and has to live with his decisions. D also revealed that, when he was a young adult in Texas, he "used to run with a pimp" and once had carried a gun but had not used it. He noted, "When I did that, I was young, and I've never like[d] it then, and I don't like it now." He also indicated that he had turned his life around since his "wild" youth.

> After D's voir dire, the prosecutor exercised a peremptory challenge to excuse D, and defense counsel raised a *Batson* objection. The prosecutor articulated three race neutral reasons for exercising his challenge: (1) similar to the [petitioner], D had been arrested by the New Haven police; (2) his son had been prosecuted by the Milford state's attorney's office, and the prosecutor disclosed that he had formerly worked at that office; and (3) because of D's stated wild youth, there was a possibility that he would empathize with the [petitioner's] circumstances despite his promise of impartiality. Defense counsel responded that these reasons were insufficient because D stated that he was not biased as a result of these experiences, and he demonstrated that he was thoughtful, candid, aware of a juror's responsibilities, and committed to being impartial. The court found that D's experiences created a risk that he might empathize with the [petitioner] and also found that the state had not engaged in a pattern of questioning him that was different from its treatment of other venire-persons. It concluded that there was nothing to suggest that the prosecutor had a race based ulterior motive in exercising a peremptory challenge to excuse D.

*Id.* at 258-60, 11 A.3d at 1112-13 (footnote omitted).

### 1. Pretextual Reasons

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court established a three-part test

for trial courts to use when considering whether a peremptory strike of a venireperson is based on an impermissible discriminatory motive. First, the trial court must determine whether the moving party has made a *prima facie* showing that the peremptory challenge is based on race. Second, the nonmoving party must come forward with a race neutral reason for striking the potential juror. The nonmoving party's burden is very low. *See Puckett v. Elem*, 514 U.S. 765, 768-69 (1995) ("The second step of this process does not demand an explanation that is persuasive or even plausible .... Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (quoting *Hernandez v. New York*, 500 U.S. 352, 359 (1991) (plurality opinion)). Third, the court must determine whether the moving party has carried its burden of proving purposeful discrimination, *i.e.*, that the challenge was based on race. *See Johnson v. California*, 545 U.S. 162, 168 (2005); *United States v. Delgado*, 971 F.3d 144, 155 (2d Cir. 2020). Ordinarily, "the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Delgado*, 971 F.3d at 155-56 (quotation marks and citation omitted).

The trial court correctly considered the *Batson* challenge. The court required the prosecutor to articulate an explanation for the challenge, determined that the explanation was facially neutral, and rejected the challenge. On appeal, the Connecticut Appellate Court noted that the trial court correctly applied the three-part *Batson* test, that the prosecutor's reasons all had been accepted as race neutral reasons supporting a peremptory challenge in other cases, and that the trial court's rejection of the *Batson* challenge was not clearly erroneous. *Myers*, 126 Conn. App. at 263-65, 11 A.3d at 1115-16. As the determinations of the trial and appellate courts reflect a reasonable application of *Batson* to the facts of this case, the state courts did not unreasonably apply federal

law. The petition for writ of habeas corpus is denied on this ground.

### 2. Disparate Treatment

The state courts addressed the petitioner's second *Batson*-related claim, in the context of his claim in the state habeas petition that trial counsel was ineffective for failing to preserve this claim for appeal. The petitioner claimed that trial counsel failed to argue that the state had treated D differently that it treated four other potential jurors. *Myers*, 164 Conn. App. at 8, 134 A.3d at 243.

The standard for a claim of ineffective assistance of counsel that was denied on the merits by a state court is well-established:

> To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment ... a defendant must demonstrate (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)) (internal citations omitted). Under the AEDPA, federal courts must grant state courts substantial "deference and latitude" when considering claims for ineffective assistance of counsel that were rejected in the state courts. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has explained that state court determinations of ineffective assistance of counsel are subject to "doubly deferential" review under the AEDPA. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 506 (2003)); *see also Fischer v. Smith*, 780 F.3d 556, 561 (2d Cir. 2015) ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (internal quotation marks omitted)).

To meet the first, or performance, prong of the test, the record must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Errors that would satisfy this prong include "omissions [that] cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003). "[W]hile in some instances 'even an isolated error' can support an ineffective assistance claim if it is 'sufficiently egregious and prejudicial,' it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

The second, or prejudice, prong requires the petitioner to establish a "reasonable probability" of a different outcome, *i.e.*, a "probability sufficient to undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. The prejudice prong can be satisfied "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.*

The state courts applied the *Strickland* standard in addressing this claim. Thus, the decisions are not contrary to federal law. The state courts did not address the performance prong of the test, and instead addressed only the prejudice prong, finding that the petitioner had not demonstrated he was prejudiced by counsel's failure to preserve the claim because the claim itself lacked merit.

To evaluate prejudice, the state courts considered whether the petitioner would have prevailed on his *Batson* claim and compared the four other venirepersons to D to determine

whether they were sufficiently similar in all respects other than race. In reviewing this claim, the Connecticut Appellate Court applied Supreme Court law set forth in *Miller-El v. Dretke*, 545 U.S. 231 (2005). The court explained that the petitioner need not identify a white juror identical in all other respects to D; such a task would be impossible. *See Myers*, 164 Conn. App. at 19-20, 134 A.3d at 250 ("A per se rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters." (quoting *Miller-el*, 545 U.S. at 247 n.6)). Instead, the court considered whether the proffered reasons for striking D logically applied to the other jurors who were accepted. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Id.* at 20, 134 A.3d at 250 (quoting *Miller-el*, 545 U.S. at 241 (internal quotation marks omitted)).

At the state habeas hearing, the court recounted facts relating to the four venirepersons the petitioner claims were similar to him with the exception of race. On appeal, the Connecticut Appellate Court considered these facts and explained why the venirepersons were not sufficiently similar. One reason offered by the prosecutor to strike D was his admission of a wild youth. None of the venirepersons testified to a similar past. Thus, the court concluded that none of the other venirepersons "posed the same type of risk of empathizing with the petitioner," "a young man who was accused of engaging in criminal activity including the use of a gun" - and, "perhaps, a desire to afford him a second chance." *Id.* at 21, 134 A.3d at 250.

A second reason proffered by the prosecutor was that D, like the petitioner, had been arrested by New Haven police officers. Although two of the venirepersons had been arrested,

neither had been arrested in New Haven. Thus, unlike D, they would not likely have had a bias against the New Haven police. *Id.* Further, the petitioner professed his innocence. Two venirepersons who had been arrested did not claim they were innocent. This differed from D, who said he was innocent and against whom charges were ultimately nolled but only after he had been arrested just because he was one of several occupants of a vehicle in which drugs were found. Thus, the appellate court distinguished D's situation as "more of a negative encounter with the police." *Id.* at 22, 134 A.3d at 251.

The prosecutor noted that he previously had worked in the Milford State's Attorney's Office, which had prosecuted and secured a conviction of D's son, who received a lengthy prison term. D attempted to compare his situation to that of another venireperson whose former *employer* had been investigated by the prosecutor, an investigation of which she was unaware at the time. The appellate court concluded that the two situations were not similar. *Id.* at 23, 134 A.3d at 251-52.

Finally, the appellate court rejected the petitioner's claim that D was similar to another venireperson whose son had been arrested. The court noted several differences between the arrest of the venireperson's son and the arrest of D's son. Unlike for D's son, neither the prosecutor nor an office in which he had worked was involved in the arrest of the other venireperson's son. The other venireperson's son was arrested for driving under the influence, but the venireperson was not involved in the matter and there was no suggestion that the son had been sentenced to a lengthy term of imprisonment. *Id.* at 23-24, 134 A.3d at 252. Thus, the Connecticut Appellate Court concluded that none of the identified venirepersons were similarly situated to D and that the petitioner would not have prevailed on the disparate treatment claim.

In reviewing this claim, the Connecticut Appellate Court relied on the facts of record from the trial and those found by the habeas court. The trial court found the prosecutor's reasons for exercising his peremptory challenge to be credible and noted that these reasons had been upheld as race neutral reasons in other cases. In a federal habeas action, the court presumes the factual findings of the state court are correct. *See Donald*, 575 U.S. at 316. The petitioner has presented no evidence to rebut this presumption of correctness. In addition, the state courts reasonably applied both the *Strickland* test and the three-part *Batson* test to the facts negating the claim for ineffective assistance of counsel. As the decision of the Connecticut Appellate Court was not an unreasonable application of federal law, the petition for writ of habeas corpus is denied on this ground.

**V.**    **Conclusion**

The petition for writ of habeas corpus [**ECF No. 1**] is **DENIED**.

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1). A court may only issue a certificate of appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the petitioner has failed to make such a showing with regard to any of his grounds for relief, the Court declines to issue a certificate of appealability. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

**SO ORDERED** this 22nd day of August 2024 at Hartford, Connecticut.

_____/s/_____
Michael P. Shea
United States District Judge